# EXHIBIT A

## Complaint and Demand for Jury Trial

923328v.1

EX-A-000001

Electronically Filed
10/12/2019 1:17 PM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
MALCOLM P. LaVERGNE, ESQ.
Nevada Bar No. 10121
MALCOLM P. LaVERGNE & ASSOCIATES
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
702.448.7981 / 702.966.3117 (Facsimile)
mlavergne@lavergnelaw.com
*Representing Plaintiff*

CASE NO: A-19-803516-C
Department 4

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| LOUIS DeSALVIO,<br><br>    Plaintiff(s),<br><br>vs.<br><br>ACUITY, A MUTUAL INSURANCE COMPANY; DOES 1 through 10, Individuals; and ROE Business Entities 1 through 10, inclusive.<br><br>    Defendant(s). | Case No.<br><br>Dept. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff Louis DeSalvio ("Plaintiff" or "DeSalvio"), by and through his attorney Malcolm P. LaVergne, Esq., and for his Complaint and Demand for Jury Trial ("Complaint") against Defendant Acuity, a Mutual Insurance Company ("Defendant" or "Acuity"), alleges the following:

I.

<u>GENERAL ALLEGATIONS</u>

1. At all relevant times, Plaintiff Louis DeSalvio ("DeSalvio") was a resident of the State of Nevada, County of Clark.

-1-

EX-A-000002

2.      Defendant Acuity, a Mutual Insurance Company ("Acuity") is a Non-Title 7 business entity licensed to do business in the State of Nevada as a casualty insurance provider pursuant to NRS chapter 681A, and conducted business within Clark County, Nevada.

3.      The facts and circumstances that give rise to this action occurred within the State of Nevada, County of Clark.

4.      At all relevant times the Defendants DOES 1 through 10, and each of them, were and are individuals involved in the tortious conduct which caused injury to Plaintiff alleged herein, whose identities are presently unknown to Plaintiff, who therefore sues those Defendants by such fictitious names, Plaintiff is informed and does believe, and thereupon alleges that each of the Defendants sued herein as DOES 1 through 10 are responsible in some manner for the events and happenings herein referred to, which thereby proximately caused the injuries and damages to Plaintiff as alleged herein; that when the true names and capacities of such Defendants become known, Plaintiff will seek leave to amend this Complaint to insert the true names, identities and capacities, together with proper charges and allegations. Specifically, the individuals were agents of Defendant who acted in concert or were agents to the alleged tortious offenses.

5.      At all relevant times the Defendants ROE Business Entities 1 through 10, and each of them, were and are individuals involved in the tortious conduct which caused injury to Plaintiff alleged herein, whose identities are presently unknown to Plaintiff, who therefore sues those Defendants by such fictitious names, Plaintiff is informed and does believe, and thereupon alleges that each of the Defendants sued herein as ROE Business Entities 1 through 10 are responsible in some manner for the events and happenings herein referred to, which thereby proximately caused the injuries and damages to Plaintiff as alleged herein; that when the true names and capacities of such Defendants become known, Plaintiff will seek leave to amend this Complaint to insert the true names, identities and capacities, together with proper charges and allegations. Specifically, the unknown business entities assisted or conspired with Acuity to cause harm to Plaintiff.

6. On or about October 12, 2017, Plaintiff DeSalvio was operating a motor vehicle in Clark County, Nevada.

7. DeSalvio was struck by the driver of another vehicle, causing him serious bodily injury.

8. The driver of the other vehicle involved in the accident – Jose De Jesus Franco-Valerio – was determined to be at fault for the accident, however, Mr. Franco-Valerio carried minimal liability coverage for bodily injury

9. DeSalvio's medical bills alone amount to approximately $68,944.22. Additionally, DeSalvio's injuries were so severe it has become necessary for him to resume treatment, specifically, additional lumbar transforaminal epidural steroid injections. The anticipated cost of this treatment – one set of lumbar transforaminal epidural steroid injections – is approximately $17,000.

10. DeSalvio made a demand to settle his injury claim against Franco-Valerio's insurer (third party). Ultimately, the tortfeasor's insurer tendered policy limits to DeSalvio, a meager $15,000.

11. At the time of DeSalvio's accident, he was driving a vehicle that was insured under a policy from Acuity. Acuity's policy contained provisions that would indemnify a first party claimant like DeSalvio up to $1,000,000 in uninsured or underinsured compensation (UM/UIM), in the event that a third party had no insurance or inadequate insurance to cover the first party's damages.

12. As noted above, the person who injured DeSalvio had insufficient insurance to cover DeSalvio's damages arising from the accident.

13. DeSalvio submitted his first party demand to Acuity which included copies of all medical records and medical bills along with a detailed review of his injuries, pain and suffering, the significant diminishment in his quality of living and other damages, proving that he had substantial damages in excess of $200,000 – less the $15,000 already received from the tortfeasor's insurer – including substantial medical bills with additional and substantial future medical costs.

14.     DeSalvio also submitted evidence to Acuity proving that the tortfeasor who injured him only had $15,000 to cover his damages.

15.     DeSalvio's demand submitted to Acuity was not a policy limits demand, rather DeSalvio made a demand against Acuity for $198,913.08 which represents less than 20% of the coverage actually available to DeSalvio under the policy with Acuity.

16.     Upon receipt of DeSalvio's first party demand for the $198,913.08, Acuity eventually only offered DeSalvio an insultingly unsatisfactory $5,000 "inclusive of all liens and billings, known and unknown" to resolve his underinsured motorist claims as the undisputed amount, and did not tender the undisputed amount to DeSalvio.

17.     Thereafter, DeSalvio sent a very reasonable counter demand to Acuity for $180,000. Acuity, in response, offered another inconsequential amount, $8,000 "inclusive of all liens and billings, known and unknown" to resolve his underinsured motorist claims as the undisputed amount.

18.     To date, Acuity has failed to tender the undisputed amount of $8,000 to DeSalvio, much less his very reasonable demand which represents less than 20% of the UM/UIM policy limits, pursuant to NRS 686A.675.

19.     Acuity was fully aware that DeSalvio had outstanding medical bills that needed to be paid as the result of his accident, that the amount tendered by the third party – $15,000 – was insufficient to cover those bills, that the amount which Acuity offered was insufficient to satisfy the remaining portion of DeSalvio's medical bills and that DeSalvio's credit was at risk of being impaired due to Acuity's failure to tender the undisputed underinsured portion of the benefits in a timely manner to cover those bills.

II.

FIRST CAUSE OF ACTION
(Breach of Contract Against ACUITY)

20.     Plaintiff hereby adopts and incorporates by reference Paragraphs "1" through "19" of the Complaint and makes them a part of the instant cause of action as though fully set forth herein.  Plaintiff further alleges:

-4-

21. DeSalvio and Acuity had a contractual relationship wherein Acuity agreed to indemnify and pay DeSalvio up to $1,000,000 under Acuity's UM/UIM policy provisions.

22. DeSalvio provided written proof of medical records and medical bills to Acuity related to his UM/UIM claim, provided written proof that his injuries, the submitted bills and corresponding treatments were all related to the accident, and DeSalvio provided proof that the third-party's insurance policy would not be able to cover the damages that DeSalvio sustained in the accident.

23. Acuity was obligated to pay DeSalvio up to $1,000,000 under the written terms of the agreement when provided with valid proof of a UM/UIM claim, but refused to do so.

24. Acuity also valued the undisputed portion of DeSalvio's underinsured motorist claim at initially $5,000 then $8,000. To date, Acuity refuses to tender the undisputed amount to DeSalvio, as required under Nevada law.

25. As a result of Acuity's material breach of contract by refusing to pay DeSalvio $198,913.08, his initial demand which represents less than 20% of the available UM/UIM coverage under the policy with Acuity, DeSalvio has been damaged in an amount that exceeds $15,000.

26. As a further direct and proximate result of Acuity's breach of contract, DeSalvio has been required to retain the services of an attorney in this matter and, therefore, DeSalvio is entitled to his reasonable attorney's fees and costs from Acuity.

SECOND CAUSE OF ACTION
(Bad Faith Breach of the Implied Covenant of Good Faith
and Fair Dealing Against ACUITY)

27. Plaintiff hereby adopts and incorporates by reference Paragraphs "1" through "26" of the Complaint and makes them a part of the instant cause of action as though fully set forth herein. Plaintiff further alleges:

28. Acuity refused to pay, and continues to refuse to pay, an entirely meritorious claim under the UM/UIM policy without a reasonable basis.

-5-

29. DeSalvio established legal entitlement to at least $198,913.08 of the UM/UIM insurance policy with Acuity through proof that a third party was at fault for the accident and providing medical bills exceeding the tortfeasor's bodily injury insurance limits.

30. Acuity failed to thoroughly and objectively investigate DeSalvio's entirely meritorious UM/UIM claim and failed to tender the undisputed portion of the UM/UIM claim.

31. Acuity engaged in one or more instances of the following types of conduct in refusing to pay DeSalvio's UM/UIM claim, including but not limited to: engaging in deceptive practices or deliberate misrepresentations to avoid paying the claim; deliberately misinterpreting records or policy language to avoid paying the claim; unreasonably delaying the resolution of the claim and failing to properly investigate; using an improper standard to avoid paying the claim; making arbitrary and unreasonable demands for proof of loss on DeSalvio to avoid paying the claim; using abusive and coercive tactics to avoid paying the claim; failing to thoroughly investigate the UM/UIM claim in accordance with Acuity's own procedures to avoid paying the claim; failing to explain DeSalvio's applicable policy provisions and exclusions to avoid paying the claim.

32. The relationship between Acuity and DeSalvio throughout all relevant times was that of insurer and insured and, therefore, the acts and omissions by Acuity constitutes bad faith.

33. As the direct and proximate result of Acuity's bad faith breach of the covenant of good faith and fair dealing regarding DeSalvio's UM/UIM claim, DeSalvio has suffered damages in an amount that exceeds $15,000.00.

34. Acuity engaged in oppressive, fraudulent, and/or malicious (express or implied) conduct by committing bad faith breach of the implied covenant of good faith and fair dealing with DeSalvio and, therefore, DeSalvio should recover exemplary and punitive damages against Acuity for the sake of example and by way of punishing Acuity.

35. As a further direct and proximate result of Acuity's bad faith breach of the implied covenant of good faith and fair dealing, DeSalvio has been required to retain the

services of an attorney in this matter and, therefore, DeSalvio is entitled to his reasonable attorney's fees and costs from Acuity.

### THIRD CAUSE OF ACTION
(Violations of NRS 686A.310 and NAC 686A.675 Against ACUITY)

36. Plaintiff hereby adopts and incorporates by reference Paragraphs "1" through "35" of the Complaint and makes them a part of the instant cause of action as though fully set forth herein. Plaintiff further alleges:

37. Acuity engaged in unfair practices against DeSalvio by engaging in the following conduct: failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under DeSalvio's insurance policy; failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under DeSalvio's insurance policy; failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by DeSalvio; failing to effectuate prompt, fair and equitable settlements of claims in which liability of Defendants to DeSalvio had become reasonably clear; delaying the investigation or payment of claims; failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; failing to provide promptly to DeSalvio a reasonable explanation of the basis in the insurance policy, with respect to the facts of DeSalvio's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

38. Pursuant to NAC 686A.675 Acuity must tender payment for the portion or portions of DeSalvio's UM/UIM policy not in dispute. To date, Acuity has failed to tender a check to DeSalvio for the undisputed amount, a meager $8,000, in direct violation of NAC 686A.675.

39. As a direct and proximate result of Acuity's enumerated violations of NRS 686A.310 and NAC 686A.675, DeSalvio has incurred damages in an amount in excess of $15,000.00.

40. As a further direct and proximate result of Acuity's violation of Nevada law on insurers dealing with insured in settling claims, DeSalvio has been required to retain the services of an attorney in this matter and, therefore, Plaintiff is entitled to his reasonable attorney's fees and costs from Acuity.

### III.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment of this Court as follows:

1. General damages in an amount in excess of $15,000.00;
2. Compensatory damages in an amount in excess of $15,000.00;
3. Medical and incidental expenses already incurred and to be incurred;
4. Damages for lost past and future household services;
5. Damages for pain, disfigurement, mental anguish, and loss of enjoyment and quality of life;
6. Punitive and exemplary damages;
7. Costs of suit, reasonable attorney's fees and interest incurred herein; and
8. For any such further additional relief as the Court may deem just and proper.

DATED this 12th day of October, 2019.

MALCOLM P. LAVERGNE & ASSOCS.

By: */s/ Malcolm P. LaVergne*
MALCOLM P. LAVERGNE, ESQ.
Nevada Bar No.: 10121
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
702.448.7981 / 702.966.3117 (Facsimile)
mlavergne@lavergnelaw.com
*Representing Plaintiff*

MALCOLM P. LAVERGNE & ASSOCIATES
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
Tel: 702.448.7981  Fax: 702.966.3117

EX-A-000009

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that, pursuant to Nev. R. Civ. P. ("NRCP") 38, Plaintiff hereby demands a jury trial on all issues so triable in the above-entitled cause.

DATED this 12th day of October, 2019.

                                              MALCOLM P. LAVERGNE & ASSOCS.

By:  /s/ Malcolm P. LaVergne
      MALCOLM P. LAVERGNE, ESQ.
      Nevada Bar No.:  10121
      *Representing Plaintiff*